## Case No. 7,910.

KNOX et al. v. LOWEREE et al.

[1 Ban. & A. 589;[1] 6 O. G. 802; Merw. Pat. Inv. 710.]

Circuit Court, D. New Jersey. Dec. 8, 1874.

PATENTS — FLUTING MACHINE — DATE OF INVENTION — REASONS FOR DELAY IN FILING — GUARDING KNOWLEDGE FROM PUBLIC.

1. The date of the invention in this case *held* to have been, when the patentee had a machine, embodying it, completed, and in operation, and actual use, although the use was private.

2. Delay in filing an application is no ground for charging the inventor with abandonment, if he was residing in the Confederate States during the war, and guarded the invention with scrupulous care, and there is no evidence, that any knowledge or use of it, reached the public.

3. Making the lower roll, in a fluting machine, adjustable, is an infringement of a patent for making the upper roll adjustable, by similar means, and for the same purpose; and making the roll adjustable, by a rack and pinion, instead of a screw, is also an infringement.

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[This was a suit in equity brought by Susan R. Knox and others against Arthur H. Loweree and others for the alleged infringement of certain patents.]

J. J. Coombs and F. W. Leonard, for complainants.

N. Perry, Jr., for defendants.

NIXON, District Judge. The bill, filed in this case, charges the defendants with infringing four different patents, belonging to the complainants, to wit: 1. Patent [No. 53,633] issued to Susan R. Knox and W. D. Corrister, April 3, 1866, and reissued to Susan R. Knox, assignee, March 1, 1870, No. 3,861. 2. Patent [No. 59,913] issued to Susan R. Knox, November 20, 1866, and reissued to her April 26, 1870, No. 3,938. 3. Patent [No. 56,365] issued to Samuel G. Cabell, July 17, 1866, and reissued to Flora B. Cabell, assignee, March 1, 1870, No. 3,856. 4. Patent issued to Flora B. Cabell, assignee, November 10, 1868, No. 83,-924, and reissued to Flora B. Cabell and Susan R. Knox, assignees, November 28, 1871, No. 4,653.

The defendants, in their answer, deny the validity of these patents, on various grounds. They allege, that the complainants were not the original and first inventors of the said inventions, or of any material or essential parts thereof; that there was a prior knowledge, use and public sale, in many parts of the United States, of machines embodying all the principles and combinations claimed as new by the complainants; that the inventions had been mentioned and described in certain printed publications; that there had been an abandonment by the inventor to the public; and that there had been no infringement by the defendants of the rights and privileges, alleged in the bill to be secured to the complainants, by their several letters patent.

On the argument, the court understood the counsel for complainants to waive all claim to recover damages, in this suit, for infringement of the two patents first above stated and described. We have, then, left for consideration, the question of the validity of the third and fourth reissued patents, and whether the defendants have infringed any of their claims. It will be observed, that these refer to the alleged inventions of Samuel G. Cabell, the assignor of the complainants; and, in considering their validity, the first inquiry will be directed to the date of his said inventions. He claims to have conceived the idea, as early as 1852. A rude sketch, marked "Ex. P," is introduced, which, he affirms, was made in that year. This was delivered to Howard H Young, by him, at Richmond, Va., in the month of July, 1862, to have a drawing made from which a model maker could construct a machine. Duplicates of the drawings then made by Young are exhibited, Q1 and Q2. The originals were taken by Cabell to Montgomery, Alabama, in the same year, and he had a fluting machine constructed from them at the Confederate ordnance department. This machine was kept under his own control, to the close of the Rebellion, no one being permitted to use it, or to ascertain the methods of its operation, except his wife, in the privacy of their own rooms. His testimony, in this respect, is confirmed by William V. Boyd, who states, that he casually saw it in operation in Mrs. Cabell's room, at a hotel in Montgomery, in January or February, 1863; that it was before June, 1863, as he left the city in May of that year, and has never been there since. If these parties speak the truth, and there seems to be no contradiction or impeachment of their evidence, it is safe to conclude, that the invention of Cabell was embodied in a complete working machine as early as the spring of 1863, and it is to that date to which we must refer, in considering the claim of prior knowledge, and public use, of the alleged invention.

The distinguishing features of Cabell's machine are claimed to be, (1) having the rolls suspended in adjustable or movable bearings, with means for elevating or depressing them, so that the fabric to be operated upon may be inserted or withdrawn, between their open ends; and (2) having the rolls so arranged, with reference to the supporting frame, as to leave an unobstructed passage-way for the fabric at right angles to their axes.

Is there any evidence, indicating a knowledge or use, prior to the spring of 1863, of a fluting machine possessing these special characteristics and qualities? Ex. No. 1 and Ex. I, are the only English machines produced, that, in construction, resemble the complainant's, and which embrace all the patentable features of Cabell's invention, except that their upper roll is not suspended in adjustable bearings, and hence, cannot be raised or separated from the lower roll. How long machines of this character have been in use in England or in this country, does not appear. Mr. Falconer was introduced by the defendant to testify upon the subject, but his evidence is exceedingly vague and unsatisfactory. But there is one fact, in regard to them, which renders it quite certain, that they do not antedate the invention of Cabell. They are so nearly alike in principle and form, that one was not constructed without a knowledge of the other. And yet Exhibit I, which came from the establishment of T. & C. Clark & Co., of Wolverhampton, has, stamped upon it, the words, "Patented November 22, 1866." When we recollect, that the British statute of monopolies, on which their patent system rests, allows a patent only for what is new within the kingdom, and refuses it for what is in use at the time of the application, the inference is strong, if not irresistible, that machines such as these exhibits, were unknown in England prior to the year 1866.

Much testimony was offered in reference to the French machines, marked Exhibits 2 and 3; the German machine, No. 4; and the

Adams machine, No. 5, to show that the. novelty of the Cabell invention was inconsistent with the manufacture and use of such machines in France, Germany and the United States. It is only necessary, to observe, in regard to these exhibits, (a) that, since the disclaimer of the complainants of all claim under reissues Nos. 3,861 and 3,938, Ex. No. 2, with which these reissues were in conflict, has been left out of the case; (b) that no evidence is offered, proving that either No. 3 or No. 5 was in existence as early as 1863; and (c) that, as to No. 4, which, more fully comprehends and embraces the idea of the Cabell invention, than any other machine exhibited, it is the conviction of the court, after a careful examination of the testimony, and of the machine itself, that the witnesses, Lambrecht, were laboring under a mistake in regard to it, and that the machine gave evidences of a more modern origin than their evidence would lead any one to believe.

The defences, that the alleged invention had been described in printed publications, and that there had been an abandonment of the same to the public by the patentee, were not insisted upon at the argument, and no proof has been found which sustains them. The length of time elapsing between the date of the invention, and the application for the patent, is explained by the state of the country at the time, and the residence of the inventor within the limits of the so-called Confederate government. He appears to have guarded his invention with scrupulous care, and there is no evidence that any knowledge or use of it reached the public, through his instrumentality, or in any other manner.

With regard to the remaining question of infringement, the defendants acknowledge the manufacture and sale of the two machines, marked respectively Exhibits C and D, and popularly known as the "Eureka" and "Peerless" machines. The claims of the reissue, No. 3,856, are seven in number, and are as follows: "1. Suspending the upper roll of a fluting machine in adjustable bearings at each end, so arranged as to leave an unobstructed passage-way for the fabric at right angles to the plane of the axis of the rolls, substantially as described. 2. Mounting the upper roll in adjustable bearings at each end, one of which shall move in bearings in the frame in such a manner as to guide and direct the vertical movements of the roll, as set forth. 3. The rigid arm, or support D, located above the rolls, in such a manner as to leave an unobstructed passage for the fabric, in combination with a roll arranged to be raised and lowered, substantially as described. 4. The yoke, consisting of the bar B, and the collars a a, one of which is made detachable, for the purpose of rendering the roll detachable, as described. 5. The combination of the upper fluted roll A, and the yoke B, having one of its bearings detachable, constructed and arranged to operate substantially as described. 6. A lid, or cap, G, arranged to close the end of the hollow rolls, substantially as set forth. 7. In combination with the fluted rolls, A A, supported in bearings at each end, and so arranged as to leave an unobstructed opening between their outer ends for the introduction

[Drawings of reissued patent No. 3,856, granted March 1, 1870, to S. G. Cabell, published from the records of the United States patent office.]

Fig. 1.

Fig. 2.

Fig. 3.

of the fabric, the spring B, or its equivalent, substantially as and for the purpose set forth."

It is obvious, that the claims, which embrace the substance of Cabell's invention, are the first and third, to wit, suspending the upper roll of the machine in adjustable bearings at each end, in combination with a rigid arm, or support, above the rolls, both so arranged as to leave an unobstructed passageway for the fabric, at right angles to the plane of their axes. These two, seem to remedy the most objectionable features of all previous machines, and, in the judgment of the court, they are infringed by the defendants. in the manufacture and sale of the Eureka and Peerless machines. The rack and pinion of the Eureka, by which the movable roll is raised and lowered, is, doubtless, a mere equivalent for the screw of Cabell; and it required no exercise of invention to make the lower roll adjustable rather than the upper one, as was done in the construction of the Peerless machine.

We do not deem it necessary, for the decision of the real questions involved in the present controversy, to enter into a detailed examination of the several claims of the two reissued patents, which the complainants allege have been infringed. Such a proceeding would protract the case to an unreasonable length, without any corresponding benefit.

In regard to the reissue No. 4,653, it will be sufficient to say, that the only claims, which appear to the court, upon inspection, to be characteristic and valuable, are the first and second, both of which are infringed by the manufacture and sale of the Eureka and Peerless machines.

There must, therefore, be a decree for the complainants against the defendants, for infringement of the first and third claims of the reissued patent No. 3,856, and of the first and second claims of the reissue No. 4,653. but without costs, and it is ordered accordingly.